CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
OCT 1 2 2012
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| STEPHENS, BOATWRIGHT, COOPER & COLEMAN, PC, et al., | )<br>)<br>) Civil Action No. 3:12CV00020 |
| Appellants, | )<br>) **MEMORANDUM OPINION** |
| v. | )<br>) By: Hon. Glen E. Conrad |
| HERBERT L. BESKIN, Chapter 13 Trustee, | ) Chief United States District Judge<br>) |
| Appellee. | ) |

In this appeal from the United States Bankruptcy Court for the Western District of Virginia, Stephens, Boatwright, Cooper & Coleman, LLC and Scott J. Newton, Esq. (collectively referred to as "counsel") seek review of the bankruptcy court's decision on their supplemental fee application for services rendered in a Chapter 13 bankruptcy case. For the reasons that follow, the bankruptcy court's decision will be affirmed.

## Background

On August 12, 2010, Ricky and Carol Clark hired counsel to assist them in filing for bankruptcy. On December 9, 2010, counsel filed a Chapter 13 petition and plan on the Clarks' behalf. Following the filing of objections by the trustee, Herbert L. Beskin, the Clarks filed an amended plan on January 25, 2011.

At the time the initial plan was filed, Mrs. Clark was suffering from a number of serious medical conditions that prohibited her from participating in the bankruptcy proceedings. Consequently, counsel prepared and filed a motion to waive credit counseling requirements and to appoint Mr. Clark as his wife's next friend. The motion was granted, following a hearing, on January 19, 2011.

On April 1, 2011, the Clarks filed an adversary complaint in which they sought to avoid a second deed of trust on their residence. The complaint was unopposed, and the bankruptcy court entered a consent order granting the requested lien avoidance on June 21, 2011.

On April 17, 2011, Mrs. Clark passed away. Mr. Clark subsequently filed amended Chapter 13 plans on four separate occasions, as well as a request for the case to proceed in Mrs. Clark's absence, pursuant to Rule 1016 of the Federal Rules of Bankruptcy Procedure.[1] The sixth and final plan was confirmed by the bankruptcy court on December 21, 2011.

On January 9, 2012, counsel filed an application for compensation, in which counsel requested $9,572.50 in attorney's fees and $429.00 in costs. The bankruptcy court held a hearing on the application on February 13, 2012. At the conclusion of the hearing, the bankruptcy court requested a recommendation from the trustee.

The trustee filed his recommendation on February 24, 2012. Based on his review of the case, and others similar to it, the trustee recommended that counsel receive the customary "no-look" fee of $2,750.00, adjusted upward by $250.00 for the work associated with pursuing the Rule 1016 notice following Mrs. Clark's death. The trustee indicated that he had no objection to the requested costs.

On March 8, 2012, the bankruptcy court issued its ruling on the application for compensation. The bankruptcy court awarded attorney's fees in the amount of $3,000.00 and costs in the amount of $779.00. Since counsel had already received a payment of fees in the amount of $2,576.00 and a payment of costs in the amount of $350.00, the ruling resulted in additional fees in the amount of $424.00 and additional costs in the amount of $429.00.

---

[1] Rule 1016 provides that, in the event of a debtor's death, a Chapter 13 case "may be dismissed; or if further administration is possible and in the best interest of the parties, the case may proceed and be concluded in the same manner, so far as possible, as though the death . . . had not occurred." Fed. R. Bankr. P. 1016.

Counsel timely appealed the bankruptcy court's ruling on the application for compensation. The matter has been fully briefed and argued, and is ripe for disposition.

## Standard of Review

Bankruptcy courts have "broad power and discretion" to award attorney's fees, and a corresponding "duty to examine them for reasonableness." Karsch v. LaBarge (In re Clark), 223 F.3d 859, 863-64 (8th Cir. 2000). An award of attorney's fees is reviewed for an abuse of discretion. See In re ASI Reactivation, Inc., 934 F.2d 1315, 1324 (4th Cir. 1991) (noting that "decisions as to the amount of attorney's fees which should be awarded are peculiarly within the bankruptcy court's discretion"). "An abuse of discretion occurs where the bankruptcy court (1) applies an improper legal standard or follows improper procedures in calculating the fee award, or (2) rests its decision on findings of fact that are clearly erroneous." Cahill v. Walker & Patterson, P.C., 428 F.3d 536, 539 (5th Cir. 2005). Accordingly, the bankruptcy court's legal conclusions are reviewed de novo and its findings of fact are reviewed for clear error. Id.

## Discussion

In a Chapter 13 case, a bankruptcy court "may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section." 11 U.S.C. § 330 (a)(4)(B). The "other factors" include those set forth in § 330(a)(3):

(A)  the time spent on such services;

(B)  the rates charged for such services;

(C)  whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of [the case];

3

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

In addition to these considerations, the United States Court of Appeals for the Fourth Circuit has instructed bankruptcy courts to evaluate fee applications in light of the following twelve factors (the "Johnson factors"):

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Harman v. Levin, 772 F.2d 1150, 1151 n.1 (4th Cir. 1985) (citing Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n. 28 (4th Cir. 1978) and Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)).

To simplify the approval of fees in Chapter 13 cases, many bankruptcy courts across the country have adopted some form of "no-look" fee that is deemed reasonable without further review by the bankruptcy court. See, e.g., Law Offices of David A. Boone v. Derham-Burk (In re Eliapo), 468 F.3d 592, 599 (9th Cir. 2006) (collecting cases). At the time the Clarks' petition

4

was filed, bankruptcy courts in the Western District of Virginia allowed a no-look fee in the amount of $2,750.00.[2]

In the instant case, the bankruptcy court used the no-look fee as a starting point for evaluating counsel's application for compensation, emphasizing that the presumptive fee is "reasonable" and that it "reflects the market rate for Chapter 13 fees in this division." In re Clark, Case No. 10-63514-LYN, op. at 4 (Bankr. W.D. Va. Mar. 8, 2012). The bankruptcy court then considered a number of the factors reflected in § 330 and Johnson to determine the extent to which the no-look fee needed to be adjusted in the Clarks' case. The bankruptcy court ultimately found that there was "nothing extraordinary" about the case, and that the no-look fee of $2,750.00, adjusted upward by $250.00, would be appropriate. Id. at 10.

Having reviewed the record, the court concludes that the bankruptcy court's decision must be affirmed. First, the court finds nothing improper about the bankruptcy court's reliance on the no-look fee. As the bankruptcy court noted in its opinion, such presumptive fees, which are utilized by "the overwhelming majority of American bankruptcy courts," have a number of advantages. Id. at 4. They "save[ ] attorney time that would otherwise be spent preparing detailed applications" and, thus have "the potential, perhaps even likely, consequence of lowering attorney's fees"; they "encourage[ ] efficient use of attorney time by providing fair compensation to efficient practitioners and by preventing inefficient practitioners from passing on the cost of their inefficiency"; and they "save[ ] time that a busy bankruptcy court would otherwise be required to spend dealing with detailed fee applications." In re Eliapo, 468 F.3d at

---

[2] While there is no standing order or local rule governing the matter, the bankruptcy court's opinion in this case, and its opinion in In re Slater, Case No. 10-62521 (Bankr. W.D. Va. Sept. 6, 2011), indicate that bankruptcy courts in the Western District of Virginia utilize a standard no-look fee in awarding compensation to attorneys in Chapter 13 cases.

5

599-600. Stated differently, the use of a precalculated, presumptive fee "aids bankruptcy courts in disposing of run-of-the-mill Chapter 13 fee applications expeditiously and uniformly, obviating the need for bankruptcy courts to make the same findings of fact regarding reasonable time expenditures and rates in typical cases for each fee application that they review." Cahill v. Walker & Patterson, P.C., 428 F.3d 536, 541 (5th Cir. 2005).

Moreover, it is clear from the record that the bankruptcy court did not give the no-look fee a disproportionate amount of weight in its analysis. Instead, the bankruptcy court applied the relevant § 330 and Johnson factors to the specific facts of the case, and provided several reasons for its discretionary fee decision. In reaching its decision, the bankruptcy court found that the hourly rate charged by counsel was higher than the court would allow, and that the number of hours claimed by counsel was "beyond the pale." In re Clark, Case No. 10-63514-LYN, op. at 9. The bankruptcy court also observed that counsel spent an unreasonable amount of time drafting an "elementary unopposed lien avoidance complaint," emphasizing that "[s]uch pleadings are generally so formulaic that compensation for attending to them is included in the no-look fee." Id. at 10. Likewise, the bankruptcy court noted that "counsel spent 23.45 hours, billed at $6,448.75, for the preparation and filing of the initial petition and plan," and that such work "should have taken no more than 10-12 hours for an unextraordinary case such as this." Id.

The bankruptcy court also addressed counsel's assertion that the case was particularly novel and difficult because Mrs. Clark passed away during the confirmation process. Although the bankruptcy court recognized that Mrs. Clark's death was an "anomaly," the bankruptcy court found that this "single definable event" did not necessitate the degree of additional compensation requested by counsel. Id. at 5, 10. The bankruptcy court emphasized that it was unclear as to why Mrs. Clark's death resulted in the filing of four amended plans, and that the issue of whether

6

the bankruptcy case could proceed in Mrs. Clark's absence should have required relatively little time and effort.

Given the degree of discretion that is necessarily afforded to the bankruptcy court in light of its "intimate knowledge of the efforts expended and the value of the services rendered," Plyler v. Evatt, 902 F.2d 273, 277-78 (4th Cir. 1990), the court is convinced that the award of attorney's fees in the instant case must be affirmed. The bankruptcy court applied the appropriate factors in determining counsel's entitlement to compensation, and made adequate findings of fact to support its decision. In the absence of any evidence of clear error, the court concludes that the bankruptcy court did not abuse is discretion in awarding fees in the total amount of $3,000.00.

## Conclusion

For the reasons stated, the court concludes that the bankruptcy court's decision must be affirmed. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 12th day of October, 2012.

_____
Chief United States District Judge